**WO**                    NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael David Saunders, | No. CV-15-00024-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

At issue is the denial of Plaintiff Michael David Saunders' Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now considers Plaintiff's Opening Brief (Doc. 16, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 17, "Def.'s Br.") accompanied by two Notices of Supplemental Authority (Docs. 19, 20), and Plaintiff's Reply (Doc. 18, "Pl.'s Reply").

**I.    BACKGROUND**

After the denial of several previous Applications, Plaintiff filed another Application for a Period of Disability and Disability Insurance Benefits under Title II of the Act and Supplemental Security Income under Title XVI of the Act on August 30, 2011, for a Period of Disability beginning April 30, 2006, later amended to January 1, 2009. (Doc. 15, R. at 72-73, 169-82.) Plaintiff's renewed claim was immediately denied, and it was denied on reconsideration on October 2, 2012. (R. at 111-13.) Plaintiff testified

at a hearing held before an Administrative Law Judge ("ALJ") on June 6, 2013. (R. at 37-67.) On July 19, 2013, the ALJ issued a decision denying Plaintiff's claim. (R. at 19-30.) The Appeals Council upheld the ALJ's decision on October 31, 2014. (R. at 1-3.) The present appeal followed.

The Court has reviewed the medical evidence in its entirety and provides a short summary here. Plaintiff saw Dr. Dale R. Schultz, a neurologist, on January 8, 2009, and Dr. Schultz wrote a "to whom it may concern" letter to say that Plaintiff has familial myotonic dystrophy—a type of muscular dystrophy characterized by muscle wasting and weakness—that "significantly impairs dexterity and motor function" and has "social and emotional consequences." (R. at 355.)

On September 13, 2011, Plaintiff saw Dr. Larry Ryan, a family medicine physician, and Dr. Ryan completed a Residual Functional Capacity ("RFC") questionnaire. (R. at 386-92.) Dr. Ryan noted that Plaintiff had myotonic muscular dystrophy and could sit for six hours and stand or walk for four hours in an eight-hour period, and he needed to take 15-minute to one-hour breaks every one to two hours. (R. at 386.) Dr. Ryan determined that Plaintiff could use his hands, fingers or arms for 20% of the workday. (R. at 387.) He opined that Plaintiff needed to take more than four days off a month due to his impairments. (R. at 387.) Finally, Dr. Ryan said that Plaintiff had a generalized anxiety disorder but it was controlled with medication. (R. at 387.)

In treatment notes dated over two years after his initial visit, on September 23, 2011, Dr. Schultz stated that Plaintiff visited him again "to establish his relationship with a neurologist and confirm his diagnosis." (R. at 395.) Dr. Schultz noted that Plaintiff "vaguely recalls having seen [Dr. Schultz] in the past," a meeting Dr. Schultz also did not recall because "it's been too many years." (R. at 395.) Plaintiff reported he had worked as a cashier at Wendy's but was fired in 2008 and "has trouble holding jobs not so much because of his disability from myotonic dystrophy but just from 'lack of hustle' and/or personality conflicts with co-workers." (R. at 395.) Dr. Schultz continued by stating Plaintiff "has apparently applied for social security disability but he is really not disabled

for a lot of occupational opportunities. He is largely applying for disability just on the basis of the diagnosis and because he can't seem to hold a job." (R. at 395.)

Dr. Schultz noted that Plaintiff suffers from chronic headaches, for which Dr. Schultz suggested the medication Depakote. (R. at 396.) Plaintiff said that Dr. Schultz had prescribed Depakote to Plaintiff in the past visit and that it had worked well to relieve his headaches. (R. at 396.) However, Plaintiff reported that Dr. Ryan had taken him off Depakote because Dr. Ryan believed it was an anti-seizure medication, perhaps not realizing Plaintiff was taking it as a prophylaxis for migraine headaches. (R. at 396.) Dr. Schultz prescribed Depakote to Plaintiff again. (R. at 396.)

In the neurological examination, Dr. Schultz found that Plaintiff had normal strength in all four extremities and, while he had trouble opening his hand back up after gripping something, he had no weakness in his hands and feet. (R. at 397.) All other results were normal, and Dr. Schultz observed that Plaintiff had "appropriate affect." (R. at 398.)

About 18 months later, on March 8, 2013, Plaintiff saw Dr. Schultz again, and Dr. Schultz stated that Plaintiff's "sole purpose today was to bring us the lengthy form title of residual functional capacity questionnaire." (R. at 564.) He noted, "Apparently [Plaintiff] has applied for social security disability twice and has been declined both times," "probably [stemming] from the fact that although he has this disorder he is still capable of working at some jobs." (R. at 564.) Dr. Schultz tabulated Plaintiff's physical abilities on the RFC form and stated he would complete the mental RFC portion after Plaintiff received the required psychometric testing. (R. at 564, 566.) Neither the physical nor mental RFC evaluations are attached to Dr. Schultz's treatment notes.[1] On March 20,

---

[1] The ALJ noted that Plaintiff first testified that Dr. Schultz gave to Plaintiff the physical RFC portion of the questionnaire, and later that Dr. Schultz never conducted the physical RFC evaluation (R. at 26), which contradicts Dr. Schultz's explicit statement that he filled out the physical RFC portion of the questionnaire (R. at 564, 566). As for the mental RFC, there is no record Plaintiff ever obtained the required psychometric testing. (R. at 26.) When asked if she had obtained the physical RFC portion of the questionnaire, Plaintiff's counsel responded that her firm had not obtained the record because Plaintiff was no longer treated by Dr. Schultz. (R. at 26.)

2013, Dr. Schultz's office received a call from Plaintiff's mother and noted Plaintiff "does not want to see Dr. Schultz" and "wants someone else asap." (R. at 621.)

On April 12, 2013, Dr. Ryan completed another RFC questionnaire for Plaintiff. (R. at 572-73.) The results did not differ significantly from the previous RFC questionnaire Dr. Ryan completed. (R. at 386-92, 572-73.)

Plaintiff underwent a psychological evaluation by state examiner Dr. Celia Drake on April 18, 2012. (R. at 509-12.) Dr. Drake reported that Plaintiff sometimes feels depressed but has not sought psychiatric or mental health care. (R. at 510.) She noted Plaintiff "was a poor historian," his "report of symptoms was somewhat vague," his depression is controlled with medication, and he "indicated no need for mental health treatment." (R. at 511.) On September 10, 2012, Dr. Jonathan Zuess, a state non-examining physican, agreed with Dr. Drake's assessment based on his review of the medical records and also noted that Plaintiff was medication non-compliant. (R. at 95-98.)

Plaintiff underwent a mental RFC evaluation by state examiner Dr. Diane Kogut on May 3, 2012. (R. at 546-48.) Dr. Kogut found that Plaintiff had no significant limitations in understanding and memory; no significant limitations in four areas of sustained concentration and persistence and moderate limitations in the remaining four areas; moderate limitations in one of the five areas of social interaction and no other significant limitations; and moderate limitations in two of the four areas of adaptation and no other significant limitations. (R. at 546-47.)

Dr. Kogut noted that Plaintiff's depression/anxiety was controlled with medication and that Plaintiff was alert and oriented with a normal affect and average intelligence. (R. at 548.) Like Dr. Drake, Dr. Kogut observed that Plaintiff's symptoms "were somewhat vague" but that his depression was associated with coping with chronic illness. (R. at 548.) She reported that Plaintiff reads, cares for dogs, has no problems with personal care and shops in stores. (R. at 548.) She concluded that Plaintiff has some limitations due to muscular dystrophy but is not markedly impaired due to a mental

- 4 -

disorder. (R. at 548.) Dr. Kogut also noted that Plaintiff is not undergoing mental health treatment and his anxiety is controlled. (R. at 548.) As a result, Dr. Kogut concluded that Plaintiff retains the mental capacity for unskilled work. (R. at 548.)

## II. ANALYSIS

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to

step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### A. The ALJ Assigned Proper Weight to the Assessments of Plaintiff's Treating Physicians and Properly Considered the Record as a Whole

Plaintiff disputes the ALJ's finding at step five of the five-step process, specifically, that when considering the combination of Plaintiff's impairments, Plaintiff's RFC allowed him to perform work in the national economy. Plaintiff's first argument is that the ALJ committed reversible error by assigning inadequate weight to the assessments of Plaintiff's family doctor, Dr. Ryan, and failing to account for RFC limitations in concentration, persistence or pace. (Pl.'s Br. at 12-17.) Defendant argues that the ALJ properly weighed the treating professionals' assessments, offering specific and legitimate reasons supported by substantial evidence in the record for giving little weight to Dr. Ryan's assessments. (Def.'s Br. at 5-13.)

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

In this instance, the ALJ found that the assessments of Plaintiff's family doctor, Dr. Ryan, were contradicted by the assessments of Plaintiff's neurologist, Dr. Schultz. (R. at 25-28.) The Court must therefore examine whether the ALJ provided specific and

- 6 -

legitimate reasons for discounting the assessments of Dr. Ryan, supported by substantial evidence when examining the record as a whole. *See Carmickle*, 533 F.3d at 1164.

In giving significant weight to Dr. Schultz's assessments and little weight to Dr. Ryan's assessment, the ALJ noted that, as a neurologist, Dr. Schultz is a specialist, and his opinion is therefore entitled to more weight than that of Dr. Ryan. (R. at 27.) The ALJ also noted Dr. Schultz's observations that Plaintiff visited him solely to obtain a diagnosis to seek disability benefits and did not seek regular care, as well as the fact that an apparently negative physical RFC evaluation completed by Dr. Schultz disappeared and that no mental RFC evaluation or psychometric testing was completed. (R. at 26.) In addition, the ALJ noted that Dr. Ryan's opinions were not consistent with the treatment records, which showed among other things that Plaintiff's mental impairments were effectively treated with medication—to the extent Plaintiff followed his medication regimen. (R. at 24-26.)

The Court finds that the ALJ provided specific and legitimate reasons, as required, for rejecting Dr. Ryan's assessments of Plaintiff's RFC, and the RFC applied by the ALJ was supported by substantial evidence in the record as a whole, including Dr. Schultz's assessments. The ALJ properly included in the RFC the limitations in Plaintiff's dexterity and motor function observed by Dr. Schultz and the other examining physicians. (R. at 25.)

**B.    The ALJ Properly Interpreted the Examining and Non-Examining Physicians' Mental Health Assessments**

Plaintiff also argues that the ALJ erred in her interpretation of the opinions of examining physician Dr. Kogut and non-examining physician Dr. Zuess, who Plaintiff contends concluded that he has moderate limitations in concentration, persistence and pace that make him unable to perform even simple work. (Pl.'s Br. at 16-17; Pl.'s Reply at 3-6.) In response, Defendant contends that the ALJ properly interpreted the evaluations of Drs. Kogut and Zuess as a whole, including their narrative descriptions of Plaintiff's RFC limitations. (Def.'s Br. at 13-16.)

The ALJ gave "great weight" to the mental RFC assessment of Dr. Kogut.[2] (R. at 27.) Upon examination of Plaintiff, Dr. Kogut concluded in checkbox form that Plaintiff had moderate limitations in four of the eight categories of sustained concentration and persistence. (R. at 546-47.) However, as the ALJ noted, Dr. Kogut concluded that Plaintiff retains the RFC for unskilled work. (R. at 27, 548.) In so concluding, Dr. Kogut observed in narrative form that Plaintiff's depression/anxiety was controlled with medication; Plaintiff was alert and oriented with a normal affect and average intelligence; Plaintiff's report of his symptoms was somewhat vague; Plaintiff reads, cares for dogs, has no problems with personal care and shops in stores; and, while Plaintiff reports mental health issues, Plaintiff has not sought any mental health treatment. (R. at 548.) In the checklist, Dr. Kogut noted that Plaintiff had no significant limitations in half of the categories of sustained concentration and persistence. (R. at 546-47.) Moreover, as the ALJ observed in her interpretation of Dr. Kogut's report, Dr. Kogut also found that Plaintiff "could perform work where interpersonal contact was incidental to the work performed; complexity of tasks was learned and performed by rote with few variables and little judgment; and the supervision required was simple, direct, and concrete (*i.e.* unskilled)." (R. at 27.) Finally, the ALJ noted that a finding that Plaintiff retains the mental RFC—including concentration—to perform unskilled work is consistent with the treatment records and other evaluations of Plaintiff, including that of Dr. Drake. (R. at 27.)

Nevertheless, Plaintiff argues that the ALJ erred when she considered Dr. Kogut's conclusion that Plaintiff retains the mental RFC to perform unskilled work because such a determination is the province of the ALJ, not an examining physician. (Pl.'s Reply at 4-5.) However, as pointed out above, the ALJ does far more than rely on Dr. Kogut's conclusion in interpreting Dr. Kogut's evaluation and making the mental RFC

---

[2] To the extent Plaintiff argues that the ALJ should also have given great weight to Dr. Ryan's mental RFC assessments, the argument fails for the reasons set forth above and particularly because, as pointed out by the ALJ, Dr. Ryan is not a mental health specialist. (*See* R. at 27-28.)

determination. The ALJ properly considered the record as a whole, and, so far as Dr. Kogut's evaluation is concerned, the ALJ properly considered the entire evaluation, including the narrative portions. *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015) (as amended).

Similarly, Plaintiff's argument as to the assessment of Dr. Zuess, a non-examining physician, fails. Dr. Zuess read and relied on Dr. Kogut's conclusions in reaching his own, and, indeed, explicitly agrees with the assessment of Dr. Drake. The ALJ's decision to exclude additional limitations in Plaintiff's ability to concentrate in the final mental RFC determination was supported by substantial evidence in the record.[3]

### C. The ALJ Properly Weighed Plaintiff's Testimony

Finally, Plaintiff argues that the ALJ erred in her consideration of Plaintiff's symptom testimony. (Pl.'s Br. at 18-21.) In response, Defendant contends that the ALJ gave Plaintiff's testimony the proper weight because some of his testimony was not supported by objective medical evidence, Plaintiff was successful in controlling his symptoms with medication and failed to follow certain medication regimens, and Plaintiff engaged in physical activity despite his claimed limitations. (Def.'s Br. at 17-22.)

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ disagreed with certain statements of Plaintiff regarding the intensity, persistence and limiting effects of his conditions and his conclusion that he is unable to perform even unskilled work. (R. at 27, 41.)

In the instances in which the ALJ assigned little value to Plaintiff's statements, the Court finds the ALJ gave specific, clear and convincing reasons for doing so. The ALJ

---

[3] Because the Court finds that the ALJ did not err in her RFC determination and the RFC was reflected in the hypotheticals she posed to the Vocational Expert, the Court need not address Plaintiff's final argument that the hypotheticals posed to the Vocational Expert did not include all of Plaintiff's limitations. (*See* Pl.'s Br. at 21-22.)

- 9 -

pointed out that Plaintiff's reports of his functional limitations were not consistent with the objective findings of examining physicians, and particularly Drs. Schultz, Drake and Kogut (as detailed above); Plaintiff's impairments were controlled with medication and he failed to take the prescribed medication to control certain conditions; and Plaintiff engaged in physical activities inconsistent with his reports of impairment, such as household chores and looking for work. (R. at 24-25.) The ALJ's credibility determination was supported by substantial evidence in the record and free from error. *See* 20 C.F.R. § 404.1529(c)(3); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

### III.  CONCLUSION

Plaintiff raises no error on the part of the ALJ, and the SSA's decision denying Plaintiff's Application for a Period of Disability and Disability Insurance Benefits under the Act was supported by substantial evidence in the record.

IT IS THEREFORE ORDERED affirming the July 19, 2013 decision of the Administrative Law Judge (R. at 19-30) as upheld by the Appeals Council on October 31, 2014 (R. at 1-3).

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 31st day of March, 2016.

Honorable John J. Tuchi
United States District Judge